**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | |
|---|---|
| **JEREMY J. QUINN, JR.,** | CASE NO. 3:22 CV 663 |
| Plaintiff, | |
| v. | JUDGE JAMES R. KNEPP II |
| **DAVE YOST, et al.,** | **MEMORANDUM OPINION AND ORDER** |
| Defendants. | |

### INTRODUCTION

*Pro se* Plaintiff Jeremy J. Quinn, Jr., an inmate in the Toledo Correctional Institution, filed this civil rights action under 42 U.S.C. § 1983 to challenge his 2005 conviction in Lucas County on six counts of rape and one count of kidnapping. Specifically, Plaintiff claims he was denied DNA testing of the victim's vaginal swab taken with the rape kit at the hospital immediately after the assault. He brings this action against the Ohio Attorney General David Yost and Lucas County Prosecutor Julia Bates claiming the failure to test the swab or allow to post-conviction testing denied him due process and equal protection. He seeks a declaration that his rights were violated and an order requiring the State of Ohio to conduct DNA testing on the swab.

### BACKGROUND

Plaintiff was convicted of kidnapping a sixteen-year-old girl at knifepoint from her driveway. *State v. Quinn*, 2008 WL 541110 (Ohio Ct. App.) ("*Quinn I*"). The victim was in her car attempting to leave for work when Plaintiff got into her car, forced her onto the floor, and took control of the vehicle. *Id.* at ¶ 14. Plaintiff had been released from prison just four days

before, and the two had never met. *Id.* at ¶¶ 14, 30. Plaintiff drove the victim to a secluded area a short distance from the victim's house and repeatedly raped her before returning her home. *Id.* at ¶¶ 14-16. The victim immediately reported the rapes to her neighbor who was outside when she exited the car; the neighbor called police. *Id.* at ¶ 17. She was transported to a local hospital where a rape kit was used to collect evidence. *Id.* Before leaving the hospital, the victim identified Plaintiff as her attacker based upon a photo provided by police. *Id.* She also described a unique tattoo on her attacker; Plaintiff has a tattoo matching the description and location identified. *Id.* at ¶¶ 15, 19, 20. Plaintiff was taken into custody that day. *Id.* at ¶ 19. Police recovered a knife, matching a description provided by the victim, after a "pat down" of Plaintiff's father. *Id.* at ¶ 21.

Plaintiff testified in his own defense, claiming he and the victim knew each other and had engaged in consensual sexual activity but not intercourse. *Id.* at ¶ 38. He testified he left the premises when she went to get a condom and he saw her driver's license indicating she was a minor. *Id.* at ¶ 31.

A forensic scientist in the serology DNA section of the Ohio Bureau of Criminal Identification and Investigation ("BCI") testified she performed serological tests on the sexual assault evidence collected from the victim. *State v. Quinn*, 2018 WL 5881638, at ¶ 14 (Ohio Ct. App.) ("*Quinn II*"). She testified semen was found on the victim's vaginal swabs, but not the vaginal smear slides. Semen was also found inside the victim's underwear. *Id.* She offered the following testimony regarding the DNA testing of the underwear:

> For the stain on the crotch of the underwear in the non-sperm fraction there was a mixture of the profiles that were generated that were consistent with being a mixture from [the victim] -- she was major contributor -- and [Plaintiff] was the minor contributor. On the sperm fraction of that same stain there was a mixture of [Plaintiff] being the major contributor, and * * * [the victim ] and the unknown individual being minor contributors.

2

*Id.* The expert testified on cross-examination she did not test the vaginal swab for DNA because she received a stronger indicator from the stain on the underwear. *Id.* at ¶ 15. She also testified she did not know whether the unknown person's DNA on the underwear stain was male or female. *Id.* When asked how the DNA of an unknown individual could have gotten there, the scientist suggested it could have been from a sneeze or a cough in the room when hospital staff placed the underwear in the rape kit. *Id.* She testified the DNA from an unknown source was not necessarily from another man's seminal fluid and it did not change the result that Plaintiff's DNA was a match. *Id.*

Plaintiff claims the test result demonstrates semen from another man was found on the victim's underwear demonstrating she engaged in sex with someone else on or near the date of the crime. He filed a Motion for DNA testing on the vaginal swab with the trial court under Ohio Revised Code § 2953.74 on January 25, 2018. *Quinn II*, 2018 WL 5881638 at ¶ 3. The trial court denied the Motion stating that the cited statute only permitted the court to consider the motion if the identity of the offender was at issue. *Id.* at ¶ 4. The court stated that in this case, Plaintiff's defense was that the sexual activity was consensual, not rape. *Id.* Plaintiff's identity as the perpetrator was not at issue, and therefore, he could not show Ohio Revised Code § 2953.74(C)(3) applied. *Id.* The Ohio Sixth District Court of Appeals agreed and affirmed the denial of the motion. *See id.* at ¶ 20.

Plaintiff has now filed this action seeking to have this federal Court declare the State of Ohio violated his rights by not conducting testing of the vaginal swab and order the State to conduct the testing. He claims he was denied due process and equal protection.

3

## STANDARD OF REVIEW

Although *pro se* pleadings are liberally construed, *Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam); *Haines v. Kerner*, 404 U.S. 519, 520 (1972), the Court is required to dismiss an *in forma pauperis* action under 28 U.S.C. §1915(e) if it fails to state a claim upon which relief can be granted, or if it lacks an arguable basis in law or fact. *Neitzke v. Williams*, 490 U.S. 319 (1989); *Lawler v. Marshall*, 898 F.2d 1196 (6th Cir. 1990); *Sistrunk v. City of Strongsville*, 99 F.3d 194, 197 (6th Cir. 1996). A claim lacks an arguable basis in law or fact when it is premised on an indisputably meritless legal theory or when the factual contentions are clearly baseless. *Neitzke*, 490 U.S. at 327.

A cause of action fails to state a claim upon which relief may be granted when it lacks "plausibility in [the] complaint." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 564 (2007). A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (quoting Fed. R. Civ. P. 8(a)(2)). The factual allegations must be sufficient to raise the right to relief above the speculative level on the assumption that all the allegations in the complaint are true. *Twombly*, 550 U.S. at 555. The plaintiff is not required to include detailed factual allegations, but must provide more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A pleading that offers legal conclusions or a simple recitation of the elements of a cause of action will not meet this pleading standard. *Id*. In reviewing a complaint, the Court must construe the pleading in the light most favorable to the plaintiff. *Bibbo v. Dean Witter Reynolds, Inc.*, 151 F.3d 559, 561 (6th Cir. 1998).

4

**DISCUSSION**

For the following reasons, Plaintiff's Complaint fails to state a claim upon which relief can be granted and must be dismissed.

Collateral Attack

As an initial matter, Plaintiff cannot collaterally attack his state court conviction in a civil rights action. Because Plaintiff is essentially challenging the validity of his conviction, his sole remedy is a writ of habeas corpus. *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973). The Court notes Plaintiff has already filed four Petitions for a Writ of habeas Corpus under 28 U.S.C. § 2254 in this Court. *See Quinn v. Ohio Dep't of Rehab. & Corr.*, No. 3:09 CV 546 (N.D. Ohio); *Quinn v. Ohio Dep't of Rehab. & Corr.*, No. 3:12 CV 419; *Quinn v. Forshey*, No. 3:14 CV 1758 (N.D. Ohio); *Quinn v. Bowen*, No. 3:18 CV 2614 (N.D. Ohio). The three most recent Petitions were denied as successive. *See In re Jeremy J. Quinn Jr.*, No. 21-3935 (6th Cir. Jun. 16, 2022) ("We denied Quinn permission to file second or successive habeas petitions in 2012, 2016, 1029, and 2021.").

A civil rights action under 42 U.S.C. § 1983 is not a permissible alternative to a Petition for Writ of Habeas Corpus if the Plaintiff essentially challenges the legality of his confinement, even if he has already been denied relief under 28 U.S.C. § 2254. *See Preiser*, 411 U.S. at 500.

*Rooker-Feldman* Doctrine

Furthermore, Plaintiff asks this Court to declare the state court wrongly decided the issue of DNA testing and order the State to conduct the tests. That relief cannot be granted in a civil rights action. United States District Courts do not have jurisdiction to overturn state court decisions even if the request is based on an allegation that the state court's action was unconstitutional. *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 292 (2005).

Only the United States Supreme Court can perform federal appellate review of state court judgments, by appeal or by writ of certiorari. *Id.* Under this principle, generally referred to as the *Rooker-Feldman* doctrine, a party losing his case in state court is barred from seeking what in substance would be appellate review of the state judgment in a United States District Court based on a claim the state judgment itself violates his federal rights. *Berry v. Schmitt*, 688 F.3d 290, 298-99 (6th Cir. 2012).

The *Rooker-Feldman* doctrine is based on two United States Supreme Court decisions interpreting 28 U.S.C. § 1257(a). *See District of Columbia Ct. of Appeals v. Feldman*, 460 U.S. 462 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923). This statute was enacted to prevent "end-runs around state court judgments" by requiring litigants seeking review of that judgment to file a writ of certiorari with the United States Supreme Court. *Kovacic v. Cuyahoga Cty. Dep't of Children & Family Servs.*, 606 F.3d 301, 308 (6th Cir. 2010). The *Rooker-Feldman* doctrine is based on the negative inference that, if appellate court review of state judgments is vested in the United States Supreme Court, then such review may not occur in the lower federal courts. *Exxon Mobil Corp.*, 544 U.S. at 283-84; *Kovacic*, 606 F.3d at 308-11; *Lawrence v. Welch*, 531 F.3d 364, 369 (6th Cir. 2008).

*Rooker-Feldman* applies narrowly. It does not bar federal jurisdiction "simply because a party attempts to litigate in federal court a matter previously litigated in state court." *Exxon Mobil Corp.*, 544 U.S. at 293; *Berry*, 688 F.3d 298-99. It also does not address potential conflicts between federal and state court orders, which fall within the parameters of the doctrines of comity, abstention, and preclusion. *Berry*, 688 F.3d 299. Instead, the *Rooker-Feldman* doctrine applies only where a party losing his case in state court initiates an action in federal district court complaining of injury caused by a state court judgment itself and seeks review and rejection of

6

that judgment. *Berry*, 688 F.3d 298-99; *In re Cook*, 551 F.3d 542, 548 (6th Cir. 2009). To determine whether *Rooker–Feldman* bars a claim, the Court must look to the "source of the injury the plaintiff alleges in the federal complaint." *McCormick v. Braverman*, 451 F.3d 382, 393 (6th Cir. 2006); *see also Berry*, 688 F.3d at 299; *Kovacic*, 606 F.3d at 310. If the source of the plaintiff's injury is the state-court judgment itself, then the *Rooker–Feldman* doctrine bars the federal claim. *McCormick*, 451 F.3d at 393. "If there is some other source of injury, such as a third party's actions, then the plaintiff asserts an independent claim." *Id*.; *see also Lawrence*, 531 F.3d at 368–69. In conducting this inquiry, the court should also consider the plaintiff's requested relief. *Evans v. Cordray*, No. 09–3998, 2011 WL 2149547, at *1 (6th Cir. May 27, 2011).

Here, Plaintiff contends the state courts wrongfully denied his request for DNA testing of the vaginal swab as not fitting within the Ohio statute permitting such testing to occur post-conviction only if the identity of the perpetrator was in question in the case. Again, the court denied the request because Plaintiff's trial defense was that his sexual activity with the victim was consensual. He contends the presence of a third person's DNA would attack the credibility of the victim who indicated she was a virgin at the time of the assault. He asks this Court to declare the state courts incorrectly decided this issue and order them to conduct the test. Such an order would amount to appellate review of the state court judgment. For the reasons set forth above, this federal Court cannot grant that type of relief.

<u>Res Judicata</u>

Moreover, to the extent that Plaintiff is simply seeking to relitigate a matter already decided in the state courts, *res judicata* bars his claim. The term "*res judicata*" literally means "a matter [already] judged." The doctrine of *res judicata* bars duplicative litigation based on the

7

same event or events. *Montana v. United States*, 440 U.S. 147, 153 (1979); *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 326 (1979). When one court has already resolved the merits of a case, another court will not revisit them. *Id*. The doctrine of *res judicata* therefore precludes a party from bringing a subsequent lawsuit on the same claim or from raising a new defense to defeat the prior judgment. *Gargallo v. Merrill Lynch, Pierce, Fenner & Smith, Inc*., 918 F.2d 658, 660 (6th Cir. 1990). It bars relitigation of every issue actually brought before the Court and every issue or defense that should have been raised in the previous action. *Id*. at 660-61.

The state courts decided the issue Plaintiff seeks to litigate here – whether he is entitled to DNA testing. In fact, the Ohio Sixth District Court of Appeals denied Plaintiff's second Motion for DNA testing on the grounds of *res judicata* indicating Plaintiff had already litigated that issue in a prior motion. *Quinn II*, 2018 WL 5881638, at ¶ 9. Plaintiff cannot bypass that procedural bar by bringing his claim in federal court. This Court must give full faith and credit to the state courts' decisions. As such, Plaintiff's claim is also barred by *res judicata*.

## CONCLUSION

For the foregoing reasons, good cause appearing it is

ORDERED that this action is DISMISSED pursuant to 28 U.S.C. §1915(e); and the Court

FURTHER CERTIFIES, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.

        s/ *James R. Knepp II*  
        UNITED STATES DISTRICT JUDGE